UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JONATHON SHARKEY,                    )
      *Plaintiff*,                       )
                                         )
*vs.*                                )     1:09-cv-0517-JMS-DKL
                                         )
MEGAN COCHRAN, *et al.*,             )
      *Defendants*.                     )

## ORDER REGARDING LEGAL SUFFICIENCY OF PLAINTIFF'S CLAIMS

The Court entered default against Defendants Megan Cochran, Teresa Lucchetti, Ross Lucchetti, and Matthew Williams (collectively, "the Defendants") on April 19, 2010.  [Dkt. 44.] On December 16, 2011, after a telephonic conference with all of the parties, the Court ordered the parties to file briefs detailing their positions regarding the legal sufficiency of Plaintiff Jonathon Sharkey's claims.  [Dkt. 55 at 4.]  Mr. Sharkey filed a brief, [dkt. 57], as did Ms. Cochran, Ms. Lucchetti, and Mr. Lucchetti, [dkt. 56].  Mr. Williams did not file anything in response to the Court's order.  The Court will now determine whether Mr. Sharkey's Complaint states plausible and legally-cognizable claims against any of the defendants.

### I.
### GENERALLY APPLICABLE LEGAL STANDARDS

#### A.  Applicable Law

Mr. Sharkey's citizenship is diverse from that of the Defendants, and he seeks $100,000 in compensatory damages plus punitive damages from each Defendant.  As a federal court sitting in diversity, the Court will apply state substantive law and federal procedural law.  *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir. 2001).  Because Indiana law applies on substantive matters, the Court must attempt to predict how the Indiana Supreme Court would decide the state legal questions at issue.  *Mindgames, Inc. v. W. Publ'g Co.*, 218 F.3d 652, 655-56 (7th Cir.

- 1 -

2000).  This Court will not expand the scope of state law beyond the current bounds set by the Indiana Supreme Court.  *See Estate of Moreland v. Dieter*, 576 F.3d 691, 700 (7th Cir. 2009) ("[T]hose who seek novel applications of state law would be better advised to bring their claims in the state courts.").

### B.  Effect of Defendants' Default

An entry of default precludes a defendant from challenging the well-pleaded facts alleged in a complaint; however, a defaulted defendant retains the right to test the sufficiency of the allegations to see whether they state a claim for which relief can be granted.  *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994).  Likewise, a defaulted defendant is not deemed to have admitted a plaintiff's damages allegations.  Fed. R. Civ. Pro. 8(b)(6).  Because a party in default does not admit mere conclusions of law, the Court must consider whether the unchallenged, well-pleaded facts constitute a legitimate cause of action.  *Black*, 22 F.3d at 1407 (citing 10 Wright & Miller, Federal Practice and Procedure § 2688 at 447-48 (1983)).  Additionally, the Court has the inherent power to screen complaints.  *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999).

### C.  Determining Sufficiency of Allegations

At the telephonic conference in December 2011, the Court alerted the parties that it "will determine the legal sufficiency of Plaintiff's asserted claims."  [Dkt. 55 at 4.]  To facilitate that process, the Court ordered the parties to submit briefs on the legal sufficiency of Mr. Sharkey's allegations and claims consistent with Federal Rules of Civil Procedure 12(c) and 12(b)(6).  [*Id.*]  The Court specifically ordered the parties to provide "arguments on the issue of whether the Complaint's well-pleaded factual allegations state plausible and legally-cognizable claims." [Dkt. 55 at 5.]

The Court will use the following standards to determine whether Mr. Sharkey has stated any plausible and legally-cognizable claims on which he can seek relief.  To state a claim for relief, Mr. Sharkey's Complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 2011 WL 4975644 at *4 (7th Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1951) (2009)).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 2012 WL 752372 at *2 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  Additionally, the height of the pleading requirement is relative to the circumstance. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).[1]

Mr. Sharkey's *pro se* Complaint will be construed liberally, *Obriecht v. Raemisch*, 517 F.3d 489, 491 n.2 (7th Cir. 2007); however, because Mr. Sharkey was given the opportunity to supplement his allegations with a brief, the Court will focus on Mr. Sharkey's subsequent characterization of his claims.

---

[1] The Court is aware of authority from the Seventh Circuit Court of Appeals that cautions district courts not to declare a complaint deficient because it does not allege a specific fact that is an element of a claim. *See, e.g.*, *Vincent v. City of Colleges of Chicago*, 485 F.3d 919, 923 (7th Cir. 2007); *Doe v. Smith*, 429 F.3d 706 (7th Cir. 2005).  Those decisions predate the United States Supreme Court's pronouncements in *Twombly* and *Iqbal*. *See Riley v. Vilsack*, 665 F. Supp. 2d 994 (W.D. Wisc. 2009) (detailing the standards pronounced in *Twombly* and *Iqbal* and concluding that the cautionary language in *Vincent* has been undermined).  Therefore, the Court will rely on the pleading standards set forth herein to determine which portions of Mr. Sharkey's Complaint, if any, state a legally cognizable claim for relief.

## II.
### PLAINTIFF'S CLAIMS AGAINST MS. COCHRAN

**A.  Negligence Resulting in Death (Count II)[2]**

Mr. Sharkey alleges that Ms. Cochran became pregnant with his child in May or June 2008 and that she had a miscarriage after she failed to take care of herself.  [Dkt. 1 at 5.]  Mr. Sharkey asserts this claim against Ms. Cochran for the death of the fetus.  According to Mr. Sharkey's allegations, Ms. Cochran was less than three months pregnant at the time of the miscarriage.  [Dkt. 1 at 6.]

The version of the Indiana Child Wrongful Death Statute in effect at the time Ms. Cochran was pregnant and miscarried defined the term "child" as an unmarried individual without dependents who is either less than twenty years of age or less than twenty-three years of age and enrolled in a postsecondary educational institution.  Ind. Code § 34-23-2-1.  The Indiana Supreme Court interpreted that statute to preclude recovery for the death of an unborn child:

> The fact that the legislature did not expressly include unborn children within the definition of "child" in the Child Wrongful Death Statute lends further credence to our conclusion that an eight- to ten-week-old fetus does not meet the statute's definition of "child."
>
> ***
>
> The express language of the statute and the fact that it is to be narrowly construed lead us to conclude that the legislature intended that only children born alive fall under Indiana's Child Wrongful Death Statute. The legislature can certainly expand the scope of protection under the Child Wrongful Death Statute if it so chooses.[[3]]

---

[2] Count I of Mr. Sharkey's Complaint against Ms. Cochran states the background for Mr. Sharkey's claims; it does not state a separate cause of action.  The separate causes of action begin at Count II.

[3] The Indiana legislature amended the Child Wrongful Death Statute effective July 1, 2009 to include "a fetus that has attained viability" within the definition of "child."  Ind. Code § 34-23-2-1 (2009).  The amendment expressly provides, however, that it "applies only to a cause of action that accrues after June 30, 2009."  Because Mr. Sharkey alleges that Ms. Cochran's pregnancy and miscarriage occurred in 2008, the 2009 amendment does not apply.

*Bolin v. Wingert*, 764 N.E.2d 201, 207 (Ind. 2002).

Mr. Sharkey alleges that Ms. Cochran was less than three months pregnant at the time of the miscarriage and that the fetus was not born alive.  Applying the Indiana Supreme Court's decision in *Bolin* interpreting the applicable version of the Child Wrongful Death Statute, Mr. Sharkey has no cause of action regarding the unborn fetus.  To repeat, this Court will not expand the scope of the statute beyond the bounds set by the Indiana Supreme Court.  *See Estate of Moreland*, 576 F.3d at 700.  Therefore, Count II against Ms. Cochran is **DISMISSED**.

### B.  Defamation (Count III)

#### 1.  Statements Posted on the Internet

Mr. Sharkey alleges that Ms. Cochran "has been posting false and defaming statements about [him] on the Internet (proof will be supplied)."  [Dkt. 1 at 7.]

To establish a claim for defamation under Indiana law, a plaintiff must prove the existence of "a communication with defamatory imputation, malice, publication, and damages." *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010).  A defamatory communication is one that "tends so to harm the reputation of another as to lower him in estimation of the community or to deter a third person from associating or dealing with him."  *Melton v. Ousley*, 925 N.E.2d 430, 437 (Ind. Ct. App. 2010).  To impose liability for defamation, a false statement of fact is required.  *Id.*

Mr. Sharkey's vague allegations are insufficient to state a legally-cognizable claim for defamation.  Neither Mr. Sharkey's Complaint nor his supporting brief identify the date of the statements, the general content of the statements, or how he was damaged by the statements.  By not giving context for his claim, Mr. Sharkey has not provided sufficient factual matter to state a claim for relief that is plausible on its face.  Moreover, Mr. Sharkey's conclusory assertion that

the unidentified statements are "defaming" is a legal conclusion that is insufficient to state a plausible claim for relief.  Therefore, the Court concludes that Mr. Sharkey has not stated a defamation claim regarding statements Ms. Cochran allegedly posted on the Internet.

### 2.  Statements in Protective Order

Mr. Sharkey also alleges that Ms. Cochran made defamatory statements in an application for protective order.  [Dkt. 1 at 7.]  These statements are that Ms. Cochran was five months pregnant, that Mr. Sharkey assaulted her and caused her miscarriage, that Mr. Sharkey kept Ms. Cochran off her medication by force, that Mr. Sharkey would not allow Ms. Cochran to go home to see her parents, that Mr. Sharkey held Ms. Cochran against her will, and that Mr. Sharkey performed sexual acts on Ms. Cochran against her will.  [Dkt. 1 at 7.]  Mr. Sharkey attached a portion of the application for protective order to his Complaint.  [Dkt. 1-3.]

"Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements."  *Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008).  This rule is based on the necessity of "preserving the due administration of justice by providing actors in judicial proceedings with the freedom to participate without fear of future defamation claims."  *Id.*

Even accepting Mr. Sharkey's allegations as true, as the Court is required to do since Ms. Cochran has defaulted, Mr. Sharkey's defamation claim regarding the statements in the protective order must be dismissed because they are protected by Indiana law.  Ms. Cochran's application for protective order is undisputedly a judicial proceeding, and the Indiana Supreme Court has held that an absolute privilege protects statements made in the course of a judicial proceeding regardless of the truth or motive behind those statements.  Therefore, the statements Ms. Cochran made in the protective order application do not support a defamation claim.

### 3. Statements to John Pemberton

Mr. Sharkey alleges that Ms. Cochran made two defamatory statements about him to Mr. Pemberton.  First, Mr. Sharkey alleges that sometime in November 2008 Ms. Cochran "made false and defaming statements against [Mr. Sharkey] to his friend John Pemberton."  [Dkt. 1 at 9 ¶ I.]  This allegation fails to state a claim for defamation for the same reason Mr. Sharkey's allegation about Ms. Cochran's alleged Internet postings fails.  By not giving context for his claim, Mr. Sharkey has not provided sufficient factual matter to state a claim for relief that is plausible on its face.  Instead, Mr. Sharkey's conclusory assertion that the unidentified statements are "defaming" is a legal conclusion that is not sufficient to state a plausible claim for relief.

Second, Mr. Sharkey alleges that sometime in February 2009 Ms. Cochran "told John Pemberton and Maggie Roth who are friends of [Mr. Sharkey], how she had given [Mr. Williams Mr. Sharkey's] passwords."  [Dkt. 1 at 9 ¶ K.]  While this statement may support Mr. Sharkey's claim that Ms. Cochran gave his passwords to Mr. Williams (a claim examined later in this order), it is not a defamatory communication.  Again, a defamatory communication harms the reputation of the plaintiff by lowering his reputation in the community or deterring a third person from dealing with him. *Melton*, 925 N.E.2d at 437.  This statement places Ms. Cochran in a negative light, not Mr. Sharkey, and is not a defamatory communication.

Because the Court concludes that none of Mr. Sharkey's allegations state a claim for defamation against Ms. Cochran, the Court **DISMISSES** Count III of Mr. Sharkey's claim against Ms. Cochran.

### C.  Invasion of Privacy  (Count IV)

Mr. Sharkey alleges that Ms. Cochran gave his passwords to various electronic accounts to Mr. Williams.  [Dkt. 1 at 9-10.]  Mr. Sharkey asserts that this disclosure was an invasion of his privacy.  [*Id.*]

Under Indiana law, the tort of invasion of privacy is a label used to describe four distinct injuries: (1) intrusion upon seclusion; (2) appropriation of likeness; (3) public disclosure of private facts; and (4) false-light publicity.  *Vargas v. Shepherd*, 903 N.E.2d 1026, 1031 (Ind. Ct. App. 2009).  The tort has been construed narrowly by Indiana courts.  *Creel v. I.C.E. & Assoc.*, 771 N.E.2d 1276, 1280 (Ind. Ct. App. 2002).

The only theory that could arguably be applicable to Mr. Sharkey's allegations against Ms. Cochran would be the public disclosure of private facts (Mr. Sharkey's passwords).  Public disclosure of private facts "occurs when a person gives publicity to a matter that concerns the private life of another, a matter that would be highly offensive to a reasonable person and that is not of legitimate public concern."  *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind. 1997).  A communication to a single person or to a small group of persons is not actionable, however, because the publicity element requires communication to the public at large or to so many persons that the matter is "substantially certain to become one of public knowledge."  *Id.* at 692; *see also Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 966 (Ind. Ct. App. 2001); *Sims v. Humane Soc'y of St. Joseph County Ind. Inc.*, 758 F. Supp. 2d 737, 748 (N.D. Ind. 2010).

Mr. Sharkey alleges that Ms. Cochran gave his passwords to only one person—Mr. Williams.  This limited disclosure is insufficient to state a claim for invasion of privacy under Indiana law.  Therefore, Count IV against Ms. Cochran is **DISMISSED**.

### D.  Conversion (Counts V & VI)[4]

Mr. Sharkey alleges multiple counts of conversion against Ms. Cochran.  Specifically, he alleges that Ms. Cochran unlawfully used his bank card to withdraw a total of $800 on two occasions, took a $300 disability payment of his, and took his personal property including two cell phones, a sword, a pistol belt, a motorcycle helmet, and three pairs of eyeglasses.  [Dkt. 1 at 10-11.]

The Indiana Crime Victim's Relief Act ("ICVRA") permits victims of certain crimes who have suffered a pecuniary loss to recover treble damages from the perpetrator.  Ind. Code § 34-24-3-1.  Conversion is encompassed by the ICVRA, and the applicable statute provides that a person who knowingly or intentionally exerts unauthorized control over property of another person commits conversion.  Ind. Code § 35-43-4-3.  A criminal conviction for the underlying misconduct is not necessary to maintain an action for associated ICVRA penalties.  *Ruse v. Bleeke*, 914 N.E.2d 1, 8 (Ind. Ct. App. 2009).

The Court concludes that Mr. Sharkey has asserted a legally-cognizable claim for conversion against Ms. Cochran.  Specifically, he has sufficiently asserted that Ms. Cochran exerted unauthorized control over specific items of his property.  Therefore, this claim will proceed to the damages phase of the litigation.

### E. Negligence (Count VII & VIII)[5]

The entirety of Mr. Sharkey's claim against Ms. Cochran for negligence provides that "[i]n all of the above mentioned allegations, [Ms. Cochran] was negligen[t]."  [Dkt. 1 at 11.]

---

[4] Mr. Sharkey labels these counts as identity theft and stealing, respectively.  Because the allegations in these counts are that Ms. Cochran took property that belonged to Mr. Sharkey, the Court will address these counts together.

[5] The Court will address Mr. Sharkey's claim for "destruction of personal property" in this section.

A plaintiff seeking damages for negligence must establish (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty. *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011).

Even construing the Complaint liberally, the only allegations in which Mr. Sharkey has stated a plausible claim for negligence concern allegations that in September 2008, Ms. Cochran had control of Mr. Sharkey's clothes, paperwork, and knee braces that he left in their house (duty), she abandoned the house and the items (breach), and the items were subsequently destroyed in a fire (damages).  [Dkt. 1 at 11.]  None of Mr. Sharkey's other allegations allege a plausible duty that Ms. Cochran owed him, how she breached that duty, or how he was injured as a result of the breach.  Therefore, the Court will allow Mr. Sharkey's negligence claim to proceed regarding the destruction of his personal property alone.

### F.  Adultery (Count IX)

Mr. Sharkey alleges that he and Ms. Cochran were married under the laws of the Vampyre Nation in June 2008.  [Dkt. 1 at 12.]  He further alleges that Ms. Cochran had an affair with Mr. Williams after that date for which she is liable.  [*Id.*]

Even assuming that Mr. Sharkey and Ms. Cochran had a legally-recognized marriage, the Indiana legislature abolished all causes of action for criminal conversation and alienation of affections in 1935.  *Pennington v. Stewart*, 10 N.E.2d 619, 622 (1937).  Therefore, Count IX against Ms. Cochran is **DISMISSED**.

### G.  Emotional Anguish (Count X)

Mr. Sharkey alleges that Ms. Cochran's actions "caused [Mr. Sharkey] to suffer severe emotional anguish[,] especially regarding her actions killing her and [Mr. Sharkey's] baby." [Dkt. 1 at 12.]  Mr. Sharkey does not elaborate upon this allegation in his brief, instead simply

stating that Ms. Cochran's "numerous actions" allow him to recover for this "condition" in a civil action.  [Dkt. 57 at 4.]

This count of Mr. Sharkey's Complaint appears to be a request for damages for emotional distress instead of an independent claim.  To the extent Mr. Sharkey can recover damages for emotional distress on his remaining claim against Ms. Cochran, the Court will consider the propriety of awarding such at the damages stage of the litigation.

Even construing Mr. Sharkey's Complaint liberally to assert an independent claim for emotional distress, Mr. Sharkey does not direct this Court to any authority that allows a man to recover damages from a woman for a first-trimester miscarriage.  The Court's independent research has not uncovered any such authority.[6]  Therefore, even construed liberally, the Court concludes that Mr. Sharkey's Complaint fails to state an independent claim for emotional distress, and Count X of Mr. Sharkey's Complaint against Ms. Cochran is **DISMISSED**.

### III.
#### PLAINTIFF'S CLAIMS AGAINST MS. LUCCHETTI

**A. Negligence Resulting in Death (Count II)[7]**

Ms. Lucchetti is Ms. Cochran's mother.  Mr. Sharkey alleges that Ms. Lucchetti repeatedly provoked arguments with Ms. Cochran while she was pregnant to impose stress on Ms. Cochran because she didn't want Ms. Cochran to have Mr. Sharkey's baby.  [Dkt. 1 at 13-14.]

---

[6] The Court acknowledges that *Bolin* held that a mother could recover independent damages for emotional distress for a miscarriage caused by the negligence of a third-party.  764 N.E.2d at 208.  That holding is distinguishable, however, because Mr. Sharkey does not assert his claim against a third-party—instead, he makes the novel claim that a father can recover from a mother who suffers a miscarriage in her first trimester.  This Court will not expand the scope of state law beyond its current bounds.  If Mr. Sharkey intended to expand Indiana state law to create a new cause of action, he should have filed his claim in state court.

[7] Count I of Mr. Sharkey's Complaint against Ms. Lucchetti states the background for Mr. Sharkey's claims; it does not state a separate cause of action.  The causes of action begin at Count II.

Therefore, Mr. Sharkey asserts that Ms. Lucchetti's actions caused Ms. Cochran's miscarriage. [Dkt. 1 at 14.]

Mr. Sharkey's claim against Ms. Lucchetti fails for the same reason his claim regarding the miscarriage failed against Ms. Cochran. *See supra* Part II.A. Specifically, the Indiana Supreme Court has held that the applicable version of the Indiana Child Wrongful Death Statute precludes recovery for the death of an unborn child. *Bolin*, 764 N.E.2d at 207 (interpreting Ind. Code § 34-23-2-1 (1998)). As stated, this Court will not expand the scope of the statute beyond the bounds set by the Indiana Supreme Court. *Estate of Moreland*, 576 F.3d at 700. Therefore, Count II of Mr. Sharkey's Complaint against Ms. Lucchetti is **DISMISSED**.

### B. Defamation (Count III)

Mr. Sharkey alleges that Ms. Lucchetti made defamatory statements about him by "mock[ing him] for his Vampyre beliefs and ways" and "trash talking" him at her place of business. [Dkt. 1 at 14.]

To establish a claim for defamation under Indiana law, a plaintiff must prove the existence of "a communication with defamatory imputation, malice, publication, and damages." *Dugan*, 929 N.E.2d at 186. A defamatory communication is one that "tends so to harm the reputation of another as to lower him in estimation of the community or to deter a third person from associating or dealing with him." *Melton*, 925 N.E.2d at 437. To impose liability for defamation, a false statement of fact is required. *Id.*

It is unclear whether Mr. Sharkey is alleging that Ms. Lucchetti mocked his religion only to him or that she mocked his religion to other people. If it is the former, Mr. Sharkey's defamation claim fails because to satisfy the publication element, a plaintiff must show that the defamatory matter was communicated to a third person. *Haegert v. McMullan*, 953 N.E.2d 1223, 1231

(Ind. Ct. App. 2011) (citing *Bals v. Verduzco*, 600 N.E.2d 1353, 1354 (Ind. 1992)).  And if it is the latter, Mr. Sharkey's claim fails because he has not alleged sufficient factual content to allow the Court to draw a reasonable inference that Ms. Lucchetti made a defamatory communication that was factual as opposed to a matter of opinion, or that tends to harm his reputation or lower him in the estimation of the community.  Specifically, he has not alleged any statement of purported fact or its date, place, or context for the statements or to whom Ms. Lucchetti made them.

As for Mr. Sharkey's allegation that Ms. Lucchetti was "trash talking" him at her place of business, Mr. Sharkey's vague allegation is insufficient to state a legally-cognizable claim for defamation.  Neither Mr. Sharkey's Complaint nor his supporting brief identify the date of the statements, the content of the statements, to whom she made the statements, or how he was damaged by the statements.  By not giving context for his claim, Mr. Sharkey has not provided sufficient factual matter to state a claim for relief that is plausible on its face.  Moreover, his conclusory assertion that the unidentified statements defamed him is a legal conclusion that is insufficient to state a plausible claim for relief.

For these reasons, the Court **DISMISSES** Count III of Mr. Sharkey's Complaint against Ms. Lucchetti.

### C.  Negligence (Count IV)

The entirety of Mr. Sharkey's negligence allegation against Ms. Lucchetti is that Ms. Lucchetti "was negligent in the above mentioned Counts, with her actions against [Mr. Sharkey]."  [Dkt. 1 at 15.]

A plaintiff seeking damages for negligence must establish (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty.  *Pfenning*, 947 N.E.2d at 398.

Mr. Sharkey's unsupported legal conclusion that Ms. Lucchetti was negligent is insufficient to state a claim for relief.  Mr. Sharkey failed to plead any factual allegations on which the Court could conclude that Ms. Lucchetti was negligent or that she owed any duty to Mr. Sharkey.  Although his brief references Ms. Cochran's miscarriage, the Court has already addressed his allegations regarding that event.  Additionally, because the Court has determined that Mr. Sharkey's claims against Ms. Lucchetti in the above-mentioned counts are legally insufficient, Mr. Sharkey's negligence claim also must fail.  Therefore, Count IV against Ms. Lucchetti is **DISMISSED**.

### D.  Emotional Anguish (Count V)

The entirety of Mr. Sharkey's emotional anguish allegations against Ms. Lucchetti is that "[a]s a result of the actions caused by [Ms. Cochran] upon [Mr. Sharkey], she has caused [Mr. Sharkey] to suffer severe emotional anguish."  [Dkt. 1 at 15.]  This claim appears to be a request for a specific type of damages instead of an independent claim.  Additionally, it seeks damages as a result of actions caused by <u>Ms. Cochran</u>, not Ms. Lucchetti, without alleging how Ms. Lucchetti would be liable for Ms. Cochran's conduct.  For these reasons, the Court **DISMISSES** Count V of Mr. Sharkey's Complaint against Ms. Lucchetti.

## IV.
### PLAINTIFF'S CLAIMS AGAINST MR. WILLIAMS

### A.  Defamation (Count II)[8]

Mr. Sharkey alleges that Mr. Williams has unlawfully entered Mr. Sharkey's email, blog, and MySpace accounts, "changed the picture and posted stuff" on the blog account, and posted a

---

[8] Count I of Mr. Sharkey's Complaint against Mr. Williams states the background for Mr. Sharkey's claims; it does not state a separate cause of action.  The causes of action begin at Count II.

"defaming petition" on the Internet.  [Dkt. 1 at 16.]  Mr. Sharkey attached the online petition to his Complaint.  [Dkt. 1-4.]

To establish a claim for defamation under Indiana law, a plaintiff must prove the existence of "a communication with defamatory imputation, malice, publication, and damages." *Dugan*, 929 N.E.2d at 186.  A defamatory communication is one that "tends so to harm the reputation of another as to lower him in estimation of the community or to deter a third person from associating or dealing with him."  *Melton*, 925 N.E.2d at 437.  To impose liability for defamation, a false statement of fact is required.  *Id.*

Defamation *per se* arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct.  *Dugan*, 929 N.E.2d at 186.

In contrast, if the words used are not defamatory on their face, but become so only when understood in the context of extrinsic evidence, they are considered defamatory *per quod*.  *Id.* If a communication is defamatory *per quod*, it "is actionable, if at all, only if it causes the plaintiff special damages."  *Rambo v. Cohen*, 587 N.E.2d 140, 146 (Ind. Ct. App. 1992) (citing Restatement (Second) of Torts § 575 (1977)).  Emotional and physical harms are not special damages unto themselves but rather are viable only when attached to pecuniary damages.  *Rambo*, 587 N.E.2d at 146.  In Indiana, asserting that the plaintiff has a mental illness can be defamation *per quod* but is not defamation *per se*.  *Baker v. Tremco, Inc.*, 890 N.E.2d 73, 85 (Ind. Ct. App. 2009), *holding summarily aff'd by Baker v. Tremco, Inc.*, 917 N.E.2d 650, 653 n.1 (Ind. 2009).

### 1. Accessing Account and Changing Picture

The Court concludes that Mr. Sharkey's vague allegations about Mr. Williams entering his account, changing his picture, and "posting stuff" are insufficient to state a legally-cognizable claim for defamation. Accessing Mr. Sharkey's account without his permission could state a civil claim for identity deception, which is addressed below, but it does not state a defamation claim. And Mr. Sharkey has not pled sufficient facts about the picture or the "stuff" Mr. Williams posted to state a claim for defamation regarding those postings. Neither Mr. Sharkey's Complaint nor his supporting brief identify the date of the postings, the content of the posting, the image used, or how Mr. Sharkey was damaged. By not giving context for his claim, Mr. Sharkey has not provided sufficient factual matter to state a claim for relief that is plausible on its face. Moreover, Mr. Sharkey's conclusory assertion that the unidentified statements are "defaming" is a legal conclusion that is not sufficient to state a plausible claim for relief on these items.

### 2. Online Petition

Mr. Sharkey's second allegation is that Mr. Williams posted a defamatory petition about him online. Mr. Sharkey attached the petition to his Complaint.[9] [Dkt. 1-4.]

The majority of the petition is Mr. Sharkey's own words copied from his website, including a thirteen-item campaign platform and a proposed punishment system for criminals. Mr. Sharkey does not allege that his words were misquoted or taken out of context, so those portions of the online petition are not defamatory because truth is a defense to defamation. *Doe v. Methodist Hospital*, 690 N.E.2d 681, 687 (Ind. 1997) (Indiana recognizes "trust as a complete defense" in actions for defamation).

---

[9] Although the petition was signed anonymously, Mr. Sharkey asserts that Mr. Williams authored it, and Mr. Williams has admitted that well-pleaded allegation by defaulting.

Mr. Williams' introduction and conclusion to the petition, however, call Mr. Sharkey a "sociopath," a "charlatan of the lowest degree," a "sexist pig," and a "man who seeks to prey upon those who he perceives as weaker." [Dkt. 1-4 at 1, 4.] The Court finds that Mr. Sharkey has sufficiently stated a defamation *per quod* claim against Mr. Williams with regard to those portions of the online petition.

### B. Invasion of Privacy (Count III)

Mr. Sharkey alleges that Mr. Williams committed the tort of invasion of privacy when he accessed Mr. Sharkey's accounts without his permission. Mr. Sharkey did not elaborate this count in his brief, so the Court has no additional information about what exactly he is pursuing.

Under Indiana law, the tort of invasion of privacy is a label used to describe four types of injury: (1) intrusion upon seclusion; (2) appropriation of likeness; (3) public disclosure of private facts; and (4) false-light publicity. *Vargas*, 903 N.E.2d at 1031. This tort has been construed narrowly by Indiana courts. *Creel*, 771 N.E.2d at 1280.

Mr. Sharkey does not specify which type of injury he sustained. Even construing his Complaint liberally, the Court finds that Mr. Sharkey's allegations could only plausibly support an intrusion or an appropriation claim for invasion of privacy.

### 1. Intrusion Claim

With regard to an intrusion claim, "no Indiana cases exist 'in which a claim of intrusion was proven without physical contact or invasion of the plaintiff's physical space such as the plaintiff's home.'" *Lemaster v. Spartan Tool, LLC*, 2009 U.S. Dist. LEXIS 21415, *11 (S.D. Ind. 2009) (quoting *Creel*, 771 N.E.2d at 1280). Impermissibly using another person's identifying information does not support a claim for invasion of privacy by intrusion under Indiana law without alleging physical contact or invasion of physical space. *Lemaster*, 2009 U.S. Dist. LEX-

IS 21415 at *11 (granting motion to dismiss on invasion of privacy by intrusion claim where plaintiff alleged defendant used social security number and other personal information to deactivate telephone account).

Mr. Sharkey does not allege that Mr. Williams intruded on his home or physical space. Because Indiana law does not support a claim for invasion of privacy by intrusion without intruding on a defendant's physical space, Mr. Sharkey's has not stated a claim for relief.

> 2.  Appropriation Claim

Mr. Sharkey's invasion of privacy by appropriation claim fares no better.  The tort of appropriation "exists where the defendant appropriates the plaintiff's name or likeness for the defendant's benefit or advantage."  *Creel*, 771 N.E.2d at 1280 (citing *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 601 (Ind. 2001)).  The phrase "name or likeness" embraces the concept of a person's character.  *Felsher*, 755 N.E.2d at 601.

Mr. Sharkey has not stated an invasion of privacy by appropriation claim because he has not alleged how Mr. Williams used Mr. Sharkey's likeness for Mr. Williams' benefit or advantage.  Mr. Sharkey's allegations focus on Mr. Williams' intent to harm Mr. Sharkey, not to benefit himself.  This is insufficient to state a claim for invasion of privacy by appropriation.  *See Lemaster*, 2009 U.S. Dist. LEXIS 21415 at *12 (granting motion to dismiss on invasion of privacy by appropriation claim where plaintiff alleged defendants used social security number and other personal information to deactivate telephone account without alleging defendants sought benefit or advantage for themselves).

For these reasons, the Court **DISMISSES** Count III of Mr. Sharkey's Complaint against Mr. Williams.

### C.  Identity Theft (Count IV)

Mr. Sharkey alleges that Mr. Williams stole his identity by accessing his accounts without his permission, changing his picture, and posting things on his blog.  [Dkt. 1 at 16-17.]

The ICVRA permits victims of certain crimes who have suffered a pecuniary loss to recover treble damages from the perpetrator.  Ind. Code § 34-24-3-1.  Identity deception is encompassed by the ICVRA.  Ind. Code § 35-43-5-3.5.  That statute provides that a person who knowingly or intentionally obtains, possesses, transfers, or uses the identifying information of another person without the other person's consent and with intent to harm or defraud another person, assume another person's identity, or profess to be another person commits identity deception.  Ind. Code § 35-43-5-3.5(a).  A criminal conviction for the underlying misconduct is not necessary to maintain an action for associated ICVRA penalties.  *Ruse*, 914 N.E.2d at 8.

The Court concludes that Mr. Sharkey has stated a claim for identity deception against Mr. Williams.  He alleges that Mr. Williams used his passwords to access his accounts without Mr. Sharkey's permission to post things, thereby assuming Mr. Sharkey's identity.  [Dkt. 1 at 16-17.]  These allegations are sufficient to assert the civil claim of identity deception.

### D.  Emotional Anguish (Count V)

The entirety of Mr. Sharkey's emotional anguish allegations against Mr. Williams is that his actions "are causing [Mr. Sharkey] a lot of emotional anguish" and that Mr. Williams "is ticking [Mr. Sharkey] off!"  [Dkt. 1 at 18-19.]

This claim appears to be a request for a specific type of damages instead of an independent claim for relief.  To the extent Mr. Sharkey can recover damages for emotional distress on his remaining claims against Mr. Williams, the Court will consider the propriety of awarding such at the damages stage of the litigation.

**V.**

**PLAINTIFF'S CLAIMS AGAINST MR. LUCCHETTI**

**A.  Defamation (Count II)**[10]

Mr. Lucchetti is Ms. Cochran's stepfather.  Mr. Sharkey alleges that Mr. Lucchetti gave an interview to John Madewell, a newscaster, and "said many false, defaming and blatant lies about [Mr. Sharkey] during the interview."  [Dkt. 1 at 18.]

To establish a claim for defamation under Indiana law, a plaintiff must prove the existence of "a communication with defamatory imputation, malice, publication, and damages." *Dugan*, 929 N.E.2d at 186.  A defamatory communication is one that "tends so to harm the reputation of another as to lower him in estimation of the community or to deter a third person from associating or dealing with him."  *Melton*, 925 N.E.2d at 437.  To impose liability for defamation, a false statement of fact is required.  *Id.*

Mr. Sharkey's vague allegations are insufficient to state a legally-cognizable claim for defamation against Mr. Lucchetti.  Mr. Sharkey does not identify any of the comments that Mr. Lucchetti made in the news interview or assert how those comments were defamatory.  Instead, Mr. Sharkey asserts legal conclusions that are insufficient to state a plausible claim for relief.  Therefore, the Court concludes that Mr. Sharkey has failed to state a defamation claim against Mr. Lucchetti regarding comments he made in the news interview.  Because Mr. Sharkey's allegations regarding the statements are insufficient to assert a defamation claim, Count II of his Complaint against Mr. Lucchetti is **DISMISSED**.

---

[10] Count I of Mr. Sharkey's Complaint against Mr. Lucchetti states the background for Mr. Sharkey's claims; it does not state a separate cause of action.  The causes of action begin at Count II.

### B.  Emotional Anguish (Count III)

The entirety of Mr. Sharkey's emotional anguish allegations against Mr. Lucchetti is that his actions "are causing [Mr. Sharkey] a lot of emotional anguish" and that Mr. Lucchetti "is ticking [Mr. Sharkey] off!"  [Dkt. 1 at 18-19.]

This claim appears to be a request for a specific type of damages instead of an independent claim for relief.  Because the Court has concluded that Mr. Sharkey has not asserted a legally-cognizable claim against Mr. Lucchetti on which to receive damages, his request for damages for emotional anguish also fails.  Therefore, Count III of Mr. Sharkey's Complaint against Mr. Cochran is **DISMISSED**.

## VI.
### DAMAGES

The Court concludes that Mr. Sharkey has stated legally-cognizable claims for 1) conversion and 2) negligence as to the destruction of personal property against Ms. Cochran as well as legally-cognizable claims for 1) defamation *per quod* and 2) identity deception against Mr. Williams.

Although the Court has considered the well-pleaded allegations of Mr. Sharkey's Complaint true for purposes of this motion, a defaulted defendant is not deemed to have admitted damages allegations.  Fed. R. Civ. Pro. 8(b)(6).  Plaintiffs do not have a right to a jury trial regarding damages on default judgment.  *Meyers v. Lakeland Supply, Inc.*, 133 F. Supp. 2d 1118 (E.D. Wis. 2001) (citing *Midland Contracting Co. v. Toledo Foundry & Mach. Co.*, 154 F. 797 (7th Cir. 1907)); *see also Sells v. Berry*, 24 Fed. Appx. 568, 571 (7th Cir. 2001) ("[G]iven the entry of default, [plaintiff] had no right to a jury trial on either liability or damages.") (citations omitted).

The Court's review of the record and the limited nature of Mr. Sharkey's remaining claims lead the Court to conclude that a jury trial is not necessary to determine Mr. Sharkey's damages. Therefore, the Court will conduct a damages hearing after the parties have sixty days to complete limited discovery on the remaining claims as set forth on page five of docket 55 (attached hereto). "Complete" means that discovery requests must be served on the producing parties with sufficient time to receive their responses before the sixty-day deadline, which will not be extended.

## V.
### CONCLUSION

Mr. Sharkey has failed to state any legally-cognizable claims for relief against Mr. and Ms. Lucchetti. Therefore, the Court **ORDERS** all claims against those parties **DISMISSED WITH PREJUDICE**.

The Court concludes that Mr. Sharkey has stated legally-cognizable claims for 1) conversion and 2) negligence as to the destruction of personal property against Ms. Cochran as well as legally-cognizable claims for 1) defamation *per quod* and 2) identity deception against Mr. Williams. Pursuant to the Court's previous order, [dkt. 55 at 5], the parties have **sixty days** to complete discovery on these claims. "Complete" means that discovery requests must be served on the producing parties with sufficient time to receive their responses before the sixty-day deadline, which will not be extended.

After the discovery period, the Court will hold a **final pretrial conference** with Magistrate Judge LaRue at **10:00 a.m.** on **June 18, 2012**. Mr. Sharkey, Ms. Cochran, and Mr. Williams are **ORDERED** to comply with the Court's trial preparation schedule detailed in **docket 55 attached hereto** (specifically, pages 6-7), which includes deadlines for **three weeks (May**

**29, 2012**), two weeks (**June 4, 2012**), and **one week (June 11, 2012**) before the final pretrial conference.

The Court will hold a damages hearing at **9:00 a.m.** on **July 18, 2012** in **Room 307** of the Birch Bayh Federal Building at 46 E. Ohio Street, Indianapolis, IN 46204.

No partial final judgment shall issue at this time as to the claim(s) resolved in this Entry.

03/21/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via Mail:</u>**

JONATHON SHARKEY
c/o The Impaler for President
5470 East Busch Blvd. #192
Temple Terrace, FL 33617

MATTHEW PAUL WILLIAMS
2015 Brandywine Lane
Martinsville, IN 46151

**<u>Distribution via ECF only</u>:**

Kimberly S. Lytle
LAW OFFICE OF KIMBERLY LYTLE
lytle.kimberly@yahoo.com